# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CLEON RILEY,**
              **Plaintiff,**

        **v.**                                    **CIVIL ACTION NO. 16-11064-LTS**

**CAROL HIGGINS O'BRIEN, ET AL.,**
              **Defendants.**

## MEMORANDUM AND ORDER

**SOROKIN, U.S.D.J.**

**I.    Introduction**

On June 6, 2016, plaintiff Cleon Riley ("Riley"), a prisoner formerly in custody at MCI

Concord (a medium-security facility) and currently in custody at the Plymouth County

Correctional Facility ("PCCF") ( a maximum-security facility), filed a civil rights Complaint

against a number of prison officials and prison service providers, including: (1) Carol Higgins

O'Brien ("Higgins O'Brien"), the Commissioner of the Massachusetts Department of Correction

("DOC"); (2) Lois Russo ("Russo"), the Superintendent of MCI Concord; (3) William Devine

("Devine"), the Deputy Superintendent of Operations at MCI Concord; (4) Joseph D. McDonald,

Jr. ("MacDonald"), the Sheriff of Plymouth County/PCCF; (5) Antone Moniz ("Moniz"), the

Superintendent of PCCF; (6) Keefe Corporation ("Keefe Corp."), the vendor of canteen items for

prisoners; and (7) Global Tel Link ("GTL"), the telephone service provider for prisoners.

Riley asserts federal claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and state claims

under the Massachusetts Tort Claims Act ("MTCA") and the Massachusetts Declaration of

Rights ("MDOR").  All of his claims stem from and after his transfer in November, 2015 from

MCI Concord to PCCF.  He claims this transfer, without a prior classification hearing in

violation of state regulations (103 C.M.R. § 120.120),[1] resulted in the loss of his personal

_____

[1]Presumably, Riley intended to reference 103 C.M.R § 420.08, which provides that, when
a transfer is necessary, a three-person board will convene a full classification hearing in
accordance with 103 C.M.R. § 420.08(1), (3)(a)-(j) and §  420.09(4).  If an inmate objects to the
outcome of the review, he or she may appeal within five business days of written notification of

property and has caused him to suffer severe restrictions or limitations with respect to his conditions of confinement at PCCF, compared with those at MCI Concord.  He further contends that as a state prisoner, he should be allowed the same conditions at PCCF that he had at MCI Concord.  Generally, his grievances include such matters as the limited access to canteen items and telephone calls, excessive charges for canteen items and telephone calls, limited access to gym and recreational activities, limited access to visitation from family and friends, the lack of immediate medical care, and the loss of his personal property.

More specifically, Riley contends that: (1) he was entitled to request a transfer to a state facility of his choice and to appeal a classification board's placement decision to Higgins O'Brien or her designee, but was not provided this opportunity; (2) Keefe Corp. and GTL operate unlawful monopolies at PCCF by excessive mark-up of their products or services; (3) Keefe Corp. does not offer a variety of items (such as a certain brand of sneakers) in its canteen and items that are offered are sub-standard; (4) GTL imposes excessive charges on telephone calls and limits the number of calls to and from family and friends (since he is unable to send money to his children for telephone calls or to put money into his account); (5) he was not allowed to pack his property at MCI Concord (*e.g.,* clothing, TV, hot pot, games, head phones, legal papers, canteen items, MP4 players) but was given only a few items of clothing and cosmetics at PCCF; (6) he lacks physical and recreational activities (such as ping pong, pool table, board games) that he had at MCI Concord, and, as a result, he has gained a lot of weight causing high blood pressure and arthritis; (7) he is not allowed contact visits with his family and cannot play games with his visitors or eat together with them as he did at MCI Concord; (8) the distance to PCCF is too far (as compared to MCI Concord) to make visitation feasible for certain family and friends; (9) he is not allowed to possess nail clippers and thus must wait a month to have his nails clipped by the foot doctor; and (10) he is not permitted to have non-narcotic

---

the review results.  103 C.M.R. § 420.09(3).  The Superintendent, or a designee, is the reviewing authority on the appeal and his or her decision is final.

medication on his person and must put in a slip to see the doctor to have his medication renewed, and this could take several days causing him to be without medication in the meantime.

As relief, Riley seeks monetary damages and declaratory relief declaring that his transfer violated his constitutional rights and that his transfer was not based on disciplinary reasons.  He also seeks injunctive relief in the form of an order that he is entitled to programs and benefits that state prisoners enjoy, and an order directing that he be transferred from PCCF to a state prison.  Further, he seeks an order requiring a hearing and appeal process before being transferred again, as well as an order awarding him the good time credit that he was earning prior to his alleged unlawful transfer for each month he is held at PCCF.  Finally, he seeks a 10-day bonus of good time credit for completing programs.

Along with the Complaint, Riley submitted a Letter (Docket No. 2) containing a copy of a "demand letter" sent to Attorney General Maura Healy on May 30, 2016, pursuant to the presentment requirements of the  MTCA, Mass. Gen. Laws ch. 258, § 4.  Referenced in the letter is a state lawsuit in the Worcester Superior Court in which Riley asserts that he was not given his classification rights, that he was unlawfully transferred to PCCF, and that his personal property was lost.  Riley v. Governor Baker, et al., Docket No. WORC 2011-00184.  In his letter, Riley's request for relief is, *inter alia*, $1,000.00 per day while confined at PCCF, $200.00 for his legal and personal property, and good time credit.

On June 10, 2016, this Court issued a Procedural Order (Docket No. 5) directing Riley to pay the $400.00 filing and administrative fees of the Court, or file a Motion for Leave to Proceed *in forma pauperis* along with his certified prison account statement demonstrating his inability to pay the fees.  On June 27, 2016, Riley filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 6).  On June 30, 2016, an Order (Docket No. 7) entered denying the motion without prejudice because Riley failed to submit his certified prison account statement.  He again was directed to pay the filing and administrative fees, or submit a renewed *in forma pauperis* request within 21 days.

On July 21, 2016, Riley filed his certified prison account statement.

## II.   Discussion

###   A.     The Renewed Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Riley's previously-filed financial affidavit and his prison account statement, this Court finds that he lacks sufficient funds to pay the $400.00 filing and administrative fees for this action up-front.  Nevertheless, because he is a prisoner, he may not obtain a complete waiver of the filing fee and he is obligated to pay the fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Riley's renewed Motion for Leave to Proceed *in forma pauperis* (Docket No. 9 ) is ALLOWED, and he is Ordered to pay the filing fee as follows.

> 1.    Riley is assessed an initial partial filing fee of $142.23, pursuant to 28 U.S.C. § 1915(b)(1)(B);[2] and

> 2.    The remainder of the fee $207.77 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

The Clerk shall send the Treasurer's Office at PCCF a copy of this Memorandum and Order to facilitate payments to this Court.

###   B.     Screening of the Complaint

Because Riley is a prisoner, the screening provisions of the PLRA come into play.  The PLRA contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).  Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325

---

[2]The initial partial assessment represents 20% of the average monthly balance for the past six months ($711.14) as reflected in his prison account certification.  This assessment is made regardless of whether or not Riley currently has sufficient funds in his prison account to pay. The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist."  28 U.S.C. § 1915(b)(1).

(1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).  Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In addition to the statutory screening requirements under § 1915, this Court has an independent obligation to inquire, *sua sponte,* into its own subject matter jurisdiction.[3] McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

In connection with this preliminary screening, Riley's *pro se* Complaint is construed generously.  Hughes v. Rowe, 449 U.S. 5, 9 (1980);  Haines v. Kerner, 404 U.S. 519, 520 (1972);  Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  Even under a broad reading, however, the Complaint is substantially deficient.

C.    Abstention

As an initial matter, the Court questions whether abstention principles would bar this Court from accepting jurisdiction over this matter because it appears that Riley already has a civil action in the Worcester Superior Court containing some of his claims that are asserted in this action.  The federal courts have long recognized the "fundamental policy against federal interference with state criminal proceedings."  Younger v. Harris, 401 U.S. 37, 46 (1971); In re

---

[3]See In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting."); Pallazola v. Rucker, 797 F.2d 1116, 1128 (1st Cir. 1986) (dismissal warranted where subject-matter jurisdiction is lacking).  See also Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (Federal courts are of limited jurisdiction, "and the requirement of subject-matter jurisdiction 'functions as a restriction on federal power.'" quoting Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

Justices of the Superior Court Dept. of the Massachusetts Trial Court, 218 F.3d 11, 16 (1st Cir. 2000).  See Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237-38 (1984) (federal court abstention from jurisdiction appropriate where "federal claims could have been or could be presented in ongoing state judicial proceedings that concern important state interests.").  The Younger abstention doctrine has been applied to other non-criminal proceedings.[4]

In this case there is insufficient information on the record for this Court to make a determination whether abstention is warranted because of the pending state case.  In light of this, the Court will address the numerous legal impediments presented by Riley's Complaint that subject it to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii) and 1915A, as set forth below.

      D.      Failure to Comply With Fed. R. Civ. P. 8

Riley's Complaint fails to comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).  It must afford the defendant(s) a "['] meaningful opportunity to mount a defense,'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  See also Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005).

---

[4]The United States Court of Appeals for the First Circuit has explained that "a federal court must abstain when there is an ongoing state proceeding (judicial in nature), which implicates important state interests and provides an adequate opportunity to raise federal defenses."  Sirva Relocation, LLC v. Richie, 794 F.3d 185, 193 (1st Cir. 2015) citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (outlining three factor test for determining whether Younger doctrine applies).  Younger applies only to "exceptional" state proceedings.  Sirva Relocation, LLC, 794 F.3d at 193 citing Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013) (stating: "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter . . . . This Court has recognized, however, certain instances in "which the prospect of undue interference with state proceedings counsels against federal relief.") (citation omitted).

"In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). Moreover, as the United States Supreme Court has stated, under Rule 8, a plaintiff must plead more than a mere allegation that the defendants have harmed him.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." quoting Twombly, 550 U.S. at 555).  See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

Here, Riley combines all of his causes of action against all of the defendants.  Thus, it is unclear what legal claims he asserts against which defendants, making it difficult for the defendants to file a meaningful response.  Moreover, although Riley names Devine as a defendant in the caption of the case, he does not identify him as a defendant in the "parties" section of the Complaint, or in the body of the Complaint itself.  Indeed, apart from the classification and transfer issues, Riley simply lists many of the adverse conditions of confinement at PCCF when compared to prison life at MCI Concord, without providing any factual connection to the defendants' actions.  Moreover, he does not provide any underlying facts to set forth claims against the defendants Higgins O'Brien, Russo, Devine, MacDonald, or Moniz based on their actions or inactions.  Thus, by asserting his claims collectively against the defendants, and by failing to provide underlying factual support for liability for each cause of action asserted, Riley fails to comply with Rule 8.  See Bagheri v. Galligan, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision finding complaint deficient because, inter alia, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's requirement of an amended complaint] to remedy this

deficiency did not demand more than the minimum necessary to satisfy notice pleading standards."); see also Atuahene v. City of Hartford, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2d Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard . . . . ").

     E.     Failure to State Plausible Claims Under 42 U.S.C. §§ 1981 and 1985

Although Riley asserts claims under 42 U.S.C. §§ 1981, and 1985, he fails to set forth how these defendants violated those statutes.   With respect to § 1985, Riley does not allege which subsection applies.  Section 1985(1) deals with preventing an officer from performing his or her duties by force, intimidation or threats.  There is no allegation in the Complaint that would invoke this provision.  Section 1985(2) deals with obstructing justice to deter any party or witness from attending or testifying in a court proceeding.  Again, there is no allegation in the Complaint that would invoke this provision.  Section 1985(3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).   Here, Riley has not alleged a conspiracy for the purpose of depriving a person or class of persons equal protection of the laws.  Indeed, there are no allegations from which this Court reasonably could infer that a conspiracy existed or that there was a conspiracy to deny equal protection, nor is there any factual support for an allegation of discriminatory animus.[5]

---

[5]"A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'"  Williams v. City of Boston, 771 F. Supp. 2d 190, 204 (D. Mass. 2011) (quoting Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988)) (subsequent history omitted).  In order to state plausible conspiracy claims, Riley must allege: "(1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Williams, 771 F. Supp. 2d at 204.  Allegations of a conspiracy under 42 U.S.C. 1983 "must . . . . be supported by material facts, not merely conclusory statements." Id.  Slotnick v. Garfinkle,

Similarly, Riley's claims under 42 U.S.C. § 1981 (involving the right of all persons to be free from discrimination in specific activities, like making and enforcing contracts and bringing suits), also fail.  There is simply no basis alleged for claims under this provision, and none reasonably can be inferred.  Accordingly, Riley's claims under these provisions are subject to dismissal.

Apart from these pleading deficiencies, there are a number of other legal impediments to Riley's claims.

F.     Failure to State Plausible Claims Pursuant to 42 U.S.C. § 1983

Section 1983 of Title 42 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law.  See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations).  "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'"  Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)); 42 U.S.C.A. § 1983.  "It is well established that 'a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'"  Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (alteration in original) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)).

Here, there are a number of legal impediments to Riley's § 1983 claims, as set forth below.

1.     Lack of *Respondeat Superior* Liability

While not entirely clear, it appears that Riley seeks to hold the individual defendants liable for civil rights violations under 42 U.S.C. § 1983 based on their supervisory and official

---

632 F.2d 163, 165 (1st Cir. 1980).

positions and for on actions or inactions of employees.  These claims fail because the legal theory of *respondeat superior* is not applicable to civil rights claims under § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 156 (1st Cir. 2006) (quoting <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 129 (1st Cir. 2005)).

### 2.   Sovereign Immunity Bars Claims For Monetary Damages Against Defendants In Their Official Capacities

Riley has not distinguished his claims against the individual defendants based on their personal or official capacities, nor does he set forth any factual basis for liability based on the defendants' individual capacities.  To the extent that Riley seeks monetary damages against any of the individual defendants in his or her "official capacity," such claims are subject to dismissal because they are barred by Eleventh Amendment sovereign immunity.[6]

### 3.   The Allegations Do not Present Any Constitutional or State-Created Liberty Interest in Classification and/or Transfer to A Particular Institution

Although Riley contends that his due process rights were violated because he did not have a classification hearing and did not have the right to appeal pursuant to state regulations, and although he argues that his transfer to PCCF was unlawful, he fails to state any plausible § 1983 due process claim as a result of the lack of classification hearing and the transfer from MCI Concord.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to state a

---

[6]The Eleventh Amendment bars suits against an unconsenting state brought by its own citizens as well as by citizens of another state.  <u>Pennhurst State Sch.& Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978)).  The Eleventh Amendment also extends to confer immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury . . . , or interfere with the public administration . . . . "  <u>Pennhurst State Sch. & Hosp.</u>, 465 U.S. at 101-102, n. 11; <u>see</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office).

cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010); Four Certain Unnamed Inmates of Mass. Correctional Inst. at Walpole v. Hall, 550 F.2d 1291, 1292 (1st Cir. 1977).   Liberty interests may arise from the Due Process Clause itself or, in some cases, from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

With respect to prisoner classification, as a general principle, there is no constitutional right which entitles an inmate to a particular institutional classification, nor is there a right to due process in the classification process.  See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Montanye v. Haynes, 427 U.S. 236, 242 (1976).  See also  Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual circumstances, inmates do not have a constitutional right to any particular security classification).   Similarly, with respect to prisoner transfers from one institution to another, as a general matter, prisoners do not have a constitutional right to placement in a particular institution.  Meachum v. Fano, 427 U.S. 215 (1976) (due process clause does not limit inter-prison transfer even when the new institution is much more disagreeable).[7]

---

[7]Meachum explained that:

The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution.  The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another.  The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.  Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system.  Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.  That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.  Our cases hold that the convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison.  He retains a variety of important rights that the courts must be alert to protect.  See Wolff v. McDonnell, 418 U.S., at 556, 94 S.Ct., at 2974, and cases there cited.  But none of these cases reaches this one; and to hold as we are urged to do that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause

Prisoners may be moved from institution to institution without any procedural formalities, such as hearings, so long as the transfer does not amount to an "atypical, significant deprivation." Sandin v. Conner, 515 U.S. 472, 486 (1995) cf. Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (the Constitution does not mandate comfortable prisons).  Prison administrators are afforded broad deference in the adoption and execution of policies and practices necessary, in their judgment, to maintain institutional security.  Bell v. Wolfish,  441 U.S. 520, 547-48 (1979).

Here, Riley has not set forth any facts from which this Court could reasonably infer that atypical and unique circumstances exist that would implicate procedural or substantive due process concerns with respect to his classification (or non-classification or lack of classification hearing), or with respect to his transfer from MCI Concord to PCCF.  Moreover, although conditions at PCCF are alleged to be more restrictive, there are no allegations that they impose a significant hardship on him in relation to the ordinary incidents of prison life.  See, e.g., Dominique v. Weld, 73 F.3d 1156, 1160-61 (1st Cir. 1996) (concluding that the inmate's transfer and loss of work release privileges did not constitute a protected liberty interest); Hastings v. Commissioner of Correction, 424 Mass. 46, 50-52 (1997) (transfer of inmates from minimum security to medium security prison did not impose an atypical or significant hardship).

Next, Riley's apparent contention that state regulations create a liberty interest actionable under § 1983 is misplaced.  Under state law, the DOC has broad discretion to transfer prisoners in its custody to other intrastate or interstate facilities.  See generally Mass. Gen. L. c. 124 § 1 (Powers and duties of the DOC Commissioner).  Transfer of a prisoner is at the discretion of the Commissioner, and a prisoner has no right or expectation under Massachusetts law that he will not be transferred except for misbehavior or some other triggering event.  Nelson v. Comm'r of

---

would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.

Meachum, 427 U.S. 215, 224-25.

Correction, 390 Mass. 379, 397, 456 N.E.2d 1100 (1983). Further, there can be no liberty interest to which due process rights attach and upon which can be infringed by a transfer. Id.; see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (noting that after Sandin, the relevant inquiry is not the language of the state regulations but the nature of those conditions in relation to the ordinary incidents of prison life).

Significantly, Massachusetts state regulations regarding classification and transfer do not expressly create a liberty interest. Section 420.01 of 103 of the Code of Massachusetts Regulations states that these regulations are "not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law." 103 C.M.R. § 420.01. This Court previously has held that "a liberty interest is created only if 'the regulations contain 'explicit mandatory language,' i.e. specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" Dominique v. Weld, 880 F. Supp. 928, 933 (D. Mass. 1995), aff'd, 73 F.3d 1156 (1st Cir. 1996) (citations omitted). In analyzing whether a liberty interest was created by the regulations with respect to participation in a work release program, Dominque noted that section 420.09 (dealing with subsequent classification board hearings) was "mainly procedural and does not provide substantive direction to the administrators for deciding how to classify an inmate." Id. Further, Domique held that the regulations did not create a liberty interest because they did not provide mandatory language. Id.[8]

In short, because no federal or state-created liberty interest in his classification (or classification hearing) or his transfer is implicated, Riley's claims are subject to dismissal and his request for a transfer back to a state prison is unsupported..

---

[8]Other cases in this Court that have addressed classification issues under 103 C.M.R. 420.08 have considered the matter in the context of whether the prisoner had exhausted administrative remedies. See, e.g., Mandeville v. Spencer, 2014 WL 3670783 (D. Mass. 2014); Delacruz v. Spencer, 2015 WL 162860, at *2 (D. Mass. Jan. 13, 2015), appeal dismissed (May 22, 2015).

4.    Failure to State Plausible Claims Based on Restricted Telephone Access

Riley contends that the charges and restrictions imposed by GTL violate his civil rights; however, as this Court has noted, "[p]risoners have no *per se* constitutional right to use a telephone." Sanchez v. Global Tel Link, et al., 2015 WL 8215880 (D. Mass. Dec. 8, 2015) quoting United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000).  Moreover, prison regulations, including restrictions on telephone access, do not infringe upon a prisoner's free speech rights if alternative means of exercising that right exist.  See, e.g., Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996) (upholding regulation that limited the number of people prisoners could telephone because prisoner could receive visitors and correspond with virtually anyone he wished); Holloway v. Magness, 2011 WL 204891, at *10 (E.D. Ark. 2011), aff'd, 666 F.3d 1076 (8th Cir. 2012) (although petitioners "would have engaged in more of the real-time, verbal communication afforded by telephone technology if prices had been lower . . .  the hardship they allege is not a constitutionally significant curtailment of the right of the free speech and association guarantee, particularly given the limited nature of that right in prison settings.").  See McMillian v. County of Onondaga, 2015 WL 1403459, *9 (N.D.N.Y. 2015) (rejecting prisoner's claim for constitutional violations based on expense of telephone call, noting there is no constitutional right to a particular fee for telephone calls).

Here, Riley does not contend that he has no access to a telephone or that he has no alternative means of communication; he only alleges that his access is more limited and costly than it was at MCI Concord.  Nevertheless, Riley has no constitutional right to a particular telephone rate.  Ferguson v. Thomas, 2016 WL 3774126, at *11 (N.D. Ala. June 20, 2016), report and recommendation adopted, 2016 WL 3753230 (N.D. Ala. July 14, 2016); see Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000); Williams v. Securus Corr. Billing, 2014 WL 7338715, *3 (W.D. Penn. 2014).

In any event, Riley does not have a cognizable claim against GTL under § 1983 because -- notwithstanding that GTL provides telephonic services to prisoners and notwithstanding that it

presumably has a public contract with the DOC -- GTL is a private company, and thus is not a state actor under § 1983.  See, e.g., Pleasant v. Cty. of Merced, 2014 WL 5781235, at *1 (E.D. Cal.  2014); Sims v. SecurusTech.net Connection, 2014 WL 1383084, at *5 (E.D.N.Y.  2014) (holding that telephone provider contracted with jail to provide inmate services was not a state actor, but was a private company, noting that a private company does not have sufficient nexus with the state merely based on the "creation, funding, licensing, or regulation by the government.") citing Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259, 273 (E.D.N.Y. 2011) (noting the fact that a "state may contract with a private party to perform a function does not [necessarily] transform the private party into a state actor) aff'd 512 F. App'x 88 (2d Cir. 2013) and Iswed v. Caruso, 2009 WL 4251076, *6 (W.D. Mich. 2009) ("the fact that telephone companies are subject to substantial government regulation does not convert their actions into that of the state."); see also Whitaker v. Dir., TDCJ-CID, 2013 WL 2318889, at *14 (E.D. Tex. 2013) (Order adopting Magistrate Judge's Report and Recommendation that plaintiff prisoner's § 1983 claims against GTL failed to state a claim for relief, rejecting plaintiff's argument that GTL was a state actor by virtue of its contract to provide telephone services to state prisoners, noting that telephone service is not a "traditionally exclusive government function" and the plaintiff failed to show that a private entity was a state actor because of state law or custom) citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) and Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982); Anderson v. Sposato, 2013 WL 2023229. *3-4 (E.D.N.Y. 2013) (discussing the state action test with respect to GTL as the provider of services to inmates of the Nassau County Jail).[9]

---

[9]"The United States Court of Appeal for the First Circuit considers factors similar to those of other district courts in its "state action test."  This is a three-part test to determine whether a private party may be considered a state actor: the state compulsion test; the public function test; and the nexus/joint action test, also known as the symbiotic relationship test.  See Cornelius-Millan v. Caribbean Univ., Inc., 2015 WL 1860831, at *2 (D.P.R. 2015); Klunder v. Brown University, 778 F.3d 24, 30-31 (1st Cir. 2015); Santiago v. Puerto Rico, 655 F.3d 61, 71 (1st Cir. 2011); Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008); Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4-7 (1st Cir. 2005).  "Under the state compulsion test a private party is fairly characterized as a state

As an additional matter, Riley contends that GTL has an unlawful monopoly.  To the extent that his allegations could be considered as asserting a violation of the Sherman Act, he fails to state a claim both with respect to GTL and with respect to the named prison officials. The Sherman Act provides, in relevant part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  Even assuming for arguments sake that the monopolistic control of the prison inmate telephone calling system at PCCF constitutes a restraint on trade, the Sherman Act was "not intended to restrain states from conducting their affairs as they see fit."  McGuire v. Ameritech Servs., Inc., 253 F. Supp. 2d 988, 1006 (S.D. Ohio 2003) (rejecting prison inmates' challenge to telephone services provided that are based on agreements between the telephone defendants and the state, based on state action doctrine) (citing, inter alia, Parker v. Brown, 317 U.S. 341 (1943) (outlining state action doctrine with respect to Sherman Act claims); see Byrd v. Goord, 2005 WL 2086321, at *4-5 (S.D.N.Y.  2005) (dismissing Sherman Act claim by recipients of collect calls made by state prisoners against state correctional officials and telephone companies, noting that Parker immunity extends to private parties acting pursuant to a state policy); Miranda v. Michigan, 168 F. Supp. 2d 685, 691-92 (E.D. Mich. 2001) (because the state gave the director of the department of corrections authority to operate its penal institutions, the official was immune from liability under the Sherman Antitrust Act with respect to rules and guidelines for telephone use).

---

actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 4 (quoting Blum v. Yaretsky, 457 U.S. 991 (1982)).  Under the nexus/joint action test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Id. at 5 (quoting Bass v. Parkwood Hospital, 180 F.3d 234, 242 (5th Cir. 1999)).  Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum, 457 U.S. at 1005).  See Larrabee v. Stockton, 2007 WL 29071, *2 (D.N.H. Jan. 03, 2007) (addressing 3 part test of First Circuit);  Mandeville v. Merrimack County Dept. of Corrections, 2006 WL 3313847 (D.N.H. 2006).

### 5. <u>Failure to State Plausible Claims Based on Lack of Canteen Items and Cost</u>

Similarly, Riley's claims that Keefe Corp. has an unlawful monopoly in operating a canteen service for prisoners also fails to state a plausible claim.  To the extent Riley's claim is based on Sherman Act violations because prisoners must purchase their goods from the canteen and because the canteen charges excessive fees, the antitrust laws do not apply.  <u>See</u> <u>Dehoney v. S. Carolina Dep't of Corr.</u>, 1995 WL 842006, at *1 (D.S.C. 1995), <u>aff'd</u>, 72 F.3d 126 (4th Cir. 1995).  Further, there is no protected liberty interest or constitutional right to canteen access.  <u>See, e.g.</u>, <u>Madison v. Parker</u>, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); <u>Bennett v. Cannon</u>, 2006 WL 2345983, at *2 (D.S.C. 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all.").  Claims concerning canteen prices do not have constitutional implications because prisoners have no right to use of a prison commissary.  <u>See e.g.</u>, <u>Pagan v. Westchester County</u>, 2014 WL 982876, *17 (S.D.N.Y. 2014) (price gouging by prison commissary does not constitute a constitutional violation); <u>Moore v. Ozmint</u>, 2012 WL 762460, *10 (D.S.C. 2012) (no constitutional right to competitively priced canteen items, because canteen access is not a protected liberty interest); <u>Hopkins v. Grondolsky</u>, 759 F. Supp. 2d 97, 102 (D. Mass. 2010) citing <u>Henderson v. Quarterman</u>, 2008 WL 3005476, at *7 (S.D.Tex. Aug. 1, 2008) (loss of commissary and recreation privileges are not atypical, significant deprivations that could encroach upon any liberty interest); <u>Hopkins v. Keefe Commissary Network Sales</u>, 2007 WL 2080480, *5 (W.D. Pa. 2007) (prisoner had no right to injunction against commissary charging exorbitant prices).  <u>See also</u> <u>Oliver v. Greenwell</u>, 2005 WL 2406015, *3 (E.D. Mo. 2005) (rejecting prisoner's challenge based on lack of items available to purchase at prison canteen).

Finally, Riley has not stated a plausible § 1983 claim because Keefe Corp., like GTL,

also appears to be a private company, and there is no basis alleged to find that Keefe Corp. is a state actor simply because it has contracted with the Commonwealth of Massachusetts to provide prisoner canteen services.  See Goldsmith v. Strickland, 2015 WL 5040008, at *4 (S.D. Miss. Aug. 26, 2015) (raising the question of lack of state action by Keefe Corp., without deciding).  See state action discussion, ¶ F (4), *supra*.

6.    Failure to State Section 1983 Claims Based on Limited Visitation

Riley complains about the lack of physical contact with his visitors.  He does not contend that he is denied all visitation, that he is treated differently compared to other PCCF inmates, or that he does not have any alternative means of communication with others.  He simply alleges that he was allowed more visitation at MCI Concord, including contact visits.

The Supreme Court has held that the right of association and maintenance of familial relationships is limited for prisoners.  Overton v. Bazzetta, 359 U.S. 126, 130 (2003).  Nevertheless, Overton held that:

> The very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner . . . . As our cases have established, freedom of association is among the least compatible with incarceration . . . .  Some curtailment of that freedom must be expected in the prison context.  We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration . . . .

Id. (holding state regulations that limited noncontact visits did not infringe upon the right of association and the limitation bore a rational relationship to legitimate penological interests); see Fennell v. Carlson, 466 F. Supp. 56, 59 (W.D. Okla. 1978) (stating "Plaintiff cannot base any right to prison visitation on his constitutional right to freedom of association under the First Amendment. Whatever right an individual has to associate physically in free society may be curtailed upon conviction for violation of the criminal laws.") citing Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119 (1977).

As an additional matter, the denial of prison access to a particular visitor is something that is ordinarily contemplated by a prison sentence.  Hewitt v. Helms, 459 U.S., at 468 and therefore is not independently protected by the Due Process Clause.  Further, "[T]he

promulgation of visiting regulations is a matter properly left to the competence and discretion of prison officials." Louis v. Ward, 444 F. Supp. 1107, 1008 (S.D.N.Y. 1978) (rejecting prisoners claims challenging limits on familial visits, the lack of a waiting room for visitors denied access to prisoners, and the failure to advise prisoners when visitors arrive, finding these restrictions on prisoners did not evidence deliberate indifference by prison officials or cruel and unusual punishment).

Finally, Riley has not set forth any basis for the notion that the Commonwealth of Massachusetts has created a liberty interest in unfettered visitation or that the defendants did not have discretion in limiting contact visitation. In light of this, Riley has not set forth any facts supporting First, Fourteenth, or Eighth Amendment claims based on the limitations on visits at PCCF.

       7.      <u>Failure to State Plausible Claims Based on Inadequate Medical Care and Lack of Exercise or Recreational Activities</u>

"Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society' only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 9 (quoting Rhodes, 452 U.S. at 347). With respect to Riley's alleged exercise deprivation, he has not set forth any facts in this regard that would rise to the level of constitutional violations. See Lyons v. City of New York, 2016 WL 3647694, at *3 (S.D.N.Y. June 30, 2016) (noting that denial of exercise can have constitutional implications; however, there is no violation where the inmate has an opportunity to exercise in or outside of the cell and the infringement on exercise is sporadic) (citations omitted). He fails to set forth any facts to show that any denial of exercise was for an extended period of time. See Huyck v. Fries, 2008 WL 1971402, at *3 (N.D. Ind. 2008) (outlining cases where deprivations of periods up to four weeks of exercise or limited exercise did not present a constitutional violation).

Similarly, alleged deprivations regarding the lack of recreational activities (because Riley does not have the same games he had at MCI Concord) do not rise to the level of cruel and

unusual punishment under the Eighth Amendment and these claims are subject to dismissal. Riley has not set forth any facts to show that the alleged deprivations were sufficiently serious such that they deprive him of the minimal of life's necessities, and, concomitantly, that the deprivation was done with deliberate indifference to his health and safety.

Next, with respect to his healthcare, Riley's claims that he has to wait to see a foot doctor or that he cannot carry non-narcotics on his person and has to see a doctor to obtain a new prescription, standing alone, fail to state a plausible claim for deliberate indifference to a serious medical need.

In order to set forth an Eighth Amendment violation based on inadequate medical care, a prisoner must show that the defendants' acts or omissions were sufficiently harmful to evidence a "deliberate indifference" to serious medical needs. Estelle v. Gamble, 429 U.S. 97. 106 (1976). Deliberate indifference has both a subjective and objective component. Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) citing Farmer v. Brennan, 511 U.S. 825, 846 n. 9 (1994). The United States Court of Appeals for the First Circuit ("First Circuit") iterated the two prong test for deliberate indifference. See Kosilek v. Spencer, 774 F.3d 63 (1st Cir. 2014). As to the objective prong, the First Circuit noted that it does not "impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." Id. at 82 (citations omitted). The Constitution proscribes care that is " 'so inadequate as to shock the conscience.'" Id. quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir.1991) (quoting Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987)).

As to the subjective prong, the First Circuit stated that "even if the medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to a prisoner's needs." Id. at 83 (citations omitted). The prison administrator's conduct is narrowly defined, and "requires evidence that the failure in treatment was purposeful." Id. (citations omitted). Negligence or medical malpractice is insufficient to rise to the level of the Eighth Amendment's prohibition against

cruel and unusual punishment.  Id. citing Estelle, 429 U.S. at 106.  In other words, a showing of deliberate indifference requires more than mere inadvertent, negligent, or even grossly negligent failure to provide medical care.  "Willful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpability ignores or turns away from what is otherwise apparent." Alsina-Ortiz v. Laboy, 400 F.3d 77, 82 (1st Cir. 2005) citing Farmer, 511 U.S. at 839-40.  "Deliberate indifference . . . is akin to criminal recklessness."  Surprenant v. Rivas, 424 F. 3d 1, 18 (2005) citing Farmer, 511 U.S. at 836-37.

Here, even if the Court considered that Riley's claims based on lack of foot care and high blood pressure constituted a serious medical need, Riley still has not set forth any facts upon which deliberate indifference to a serious medical need could be inferred, nor has he set forth the the proper defendants to such a claim.  As noted above, *respondeat superior* is not a cognizable theory of liability.  Moreover, Riley has not set forth the "who, what, when, where and how information" in accordance with Rule 8.

   8.   Failure to State Section 1983 Claims Based on the Loss of Personal Property and Failure to State an MTCA Claim

To the extent that Riley alleges a due process violation based on the loss of his personal property that he possessed at MCI Concord but which has not been provided to him at PCCF, he fails to state plausible § 1983 claims because the existence of an adequate post-deprivation remedy satisfies the requirements of procedural due process.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003) ("due process is not violated where the deprivation is caused by the random and unauthorized conduct of state officials and where the state provides adequate post-termination procedures).

Here, Riley has, in fact, submitted an exhibit showing that he has already filed a complaint in the Worcester Superior Court concerning the loss of his property.  He has not

alleged in this action that he does not have an adequate state remedy and thus cannot state any § 1983 claims.  Riordan v. Martin, 51 F.3d 264, 1995 WL 146215 at *1 (1st Cir. 1995) (unpublished disposition) ("[s]ince inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory." citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Additionally, Riley appears to have (or will have) an adequate post-deprivation remedy under the MTCA, which permits a suit against a public employer for the loss of property caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his or her employment.  See Mass. Gen. Laws. ch. 258, § 2.  As noted previously, his May 30, 2016 letter to the Massachusetts Attorney General's Office appears to be his administrative presentment under the MTCA, pursuant to Mass. Gen. Laws ch. 258, § 4.  In any event, Riley cannot bring his MTCA claims in this Court.  First, the proper defendant in an MTCA claim is the Commonwealth of Massachusetts, not the named defendants in this action, because the statute permits recovery for liability against public employers, including the Commonwealth of Massachusetts; however, it shields  public employees such as the defendants from liability for personal injury or death caused by  negligent or wrongful acts or omissions while acting within the scope of their office or employment.  Mass. Gen. Laws ch. 258, § 2. Second, it does not appear that Riley has completely exhausted his administrative remedies as required by the MTCA and received a "final" agency decision.  Finally, this Court lacks jurisdiction over an MTCA claim because the waiver of sovereign immunity is limited to a waiver of suit in the state court, but not the federal court.[10]

---

[10]Case law indicates that the Commonwealth has not waived its sovereign immunity under the MTCA to suit in federal court (as jurisdiction is conferred on the state superior court); See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. (Mass) 2003) ("By enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."); Rivera v. Massachusetts, 16 F. Supp. 2d 84-87-88 (D. Mass. 1998) (citing Irwin v. Comm'r of Dep't of Youth Servs., 338 Mass. 810, 448 N.E.2d 721, 727 (1983) (answering question certified by the United States District Court for the District of

G.        Failure to State Plausible MDOR Claims

Riley alleges that his claims also arise under the MDOR.  In <u>Martino v. Hogan</u>, 37 Mass. App. Ct. 710, 720-21 (1994), the Massachusetts Appeals Court addressed the issue of whether a cause of action alleging a violation of a provision of the State Constitution could be accorded relief directly under the State Constitution.  In affirming the dismissal of a former inmate's claim for damages under art. 12 of the Massachusetts Declaration of Rights, the <u>Martino</u> court held that there was no authority upon which to base a damages claim directly upon the Constitution's Declaration of Rights.  <u>Id.</u> at 720.   The <u>Martino</u> court stated that the existence of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & 11I, appeared "to occupy the field," similar to that of 42 U.S.C. § 1983 in the context of alleged violations of the Federal Constitution, and preclude a claim for equitable relief or damages directly under the State Constitution.  <u>Id.</u>

Accordingly, in order to maintain a claim for a violation of the Massachusetts Declaration of Rights, a plaintiff must demonstrate that the defendant interfered with his civil rights in violation of the MCRA.  "To establish a claim under the [MCRA], a plaintiff must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"

<u>Swanset Development Corp. v. Tauton</u>, 423 Mass. 390, 395 (1996).  The Massachusetts Supreme

---

Massachusetts, to the effect that jurisdiction conferred on the superior court under the MTCA, Mass. Gen. Laws ch. 258, § 3 is exclusive); <u>Cf.</u> <u>Rivera v. Com. of Mass.</u>, 16 F. Supp. 2d 84, 88 (D. Mass. 1998) (discussing federal court jurisdiction over MTCA claims, noting that "apart from declining to waive its Eleventh Amendment immunity, a state has no power to deprive federal courts of diversity or supplemental jurisdiction over state law causes of action"); <u>Hindes v. FDIC</u>, 137 F.3d 148, 168 n.15 (1st Cir. 1998) ("a state statute cannot be applied so as to limit a federal court's supplemental jurisdiction."); <u>Hardemon v. City of Boston</u>, 144 F.3d 24, 28 (1st Cir. 1998).  In any case, in the absence of an independent basis for jurisdiction under 28 U.S.C. § 1331 (federal question), this Court likely would decline to exercise supplemental jurisdiction over any of Riley's state law claims.

Judicial Court has held that the state civil rights act does not create a vast constitutional tort, stating that "the legislature has explicitly limited this remedy to situations where the deprivation of secured rights occurs by 'threats, intimidation or coercion.'"  Bell v. Mazza, 394 Mass. 16, 18 (1985).

Here, Riley has not alleged that any deprivations were made with threats, intimidation, or coercion, nor has he interposed any factual underpinnings to support such an inference.   He therefore fails to state plausible MDOR claims.[11]

## III.    Order to Show Cause or Amend Complaint

In light of all of the above, this action is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)((2)(i)-(iii) and 1915A.  Accordingly, this action shall be dismissed within 42 days of the date of this Memorandum and Order unless Riley submits a "Show Cause Response" in writing demonstrating good cause why this action should not be dismissed based on the various legal impediments discussed herein.  Riley need not reassert the allegations contained in his Complaint; rather, he should address, with legal and factual support, each of the legal impediments discussed in this Memorandum and Order.

In the alternative, Riley may show good cause by filing an Amended Complaint curing the pleading deficiencies and setting forth plausible claims in accordance with Fed. R. Civ. P. 8 (expressly setting forth the name of each defendant, the separate cause of action asserted against each defendant, and a concise statement of the factual basis supporting each cause of action (*i.e.,* the who, what, where, when, and how information).  Riley should not collectively assert his

---

[11]As a final matter, Riley has not stated whether he has properly exhausted his administrative remedies as to each of his claims concerning his classification hearing, transfer, and conditions of confinement in accordance with 42 U.S.C. § 1997e(a); however, PLRA exhaustion is an affirmative defense requiring the defendant to prove the failure to exhaust administrative remedies.  Jones v. Bock, 549 U.S. 199, 216 (2007).  Moreover, Riley is not required to plead exhaustion to avoid dismissal of his Complaint upon a preliminary screening. Accordingly, this Court makes no preliminary findings in this regard.

causes of action against all of the defendants.[12]

Failure to comply with the directives contained in this Memorandum and Order may result in a dismissal of this action.  No summonses shall issue pending further Order of the Court.

## IV.   Conclusion and Order

Based on the foregoing, it is hereby Ordered that:

1.   Plaintiff's renewed Motion for Leave to Proceed *in forma pauperis* is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.   Within 42 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the reasons stated herein or he shall file an Amended Complaint curing the pleading deficiencies in accordance with Rule 8 of the Federal Rules of Civil Procedure.

SO ORDERED.

 /s/ Leo T. Sorokin                
LEO T. SOROKIN
UNITED STATES DISTRICT JUDGE

DATED: 9/6/2016

---

[12]In order to facilitate the filing of an Amended Complaint, the Court suggests, but does not require, that Riley use the following template.

| NAME OF DEFENDANT (specify if sued in individual and/or official capacity) | LEGAL THEORY OF LIABILITY (*e.g.* negligence, § 1981, § 1983) | DATE OF THE ALLEGED ACTION | PLACE OF ALLEGED ACTION | BRIEF DESCRIPTION OF UNDERLYING FACTS SURROUNDING THE ALLEGED EVENT |
|---|---|---|---|---|